# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| REYMUNDO FELIPE, | ) | NO. 75232-4-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | PUBLISHED OPINION |
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Appellant. | ) | FILED: September 12, 2016 |
| | ) | |

LEACH, J. — Reymundo Felipe appeals an adverse trial court judgment that denied his request to reopen a worker's compensation claim for additional medical treatment. Felipe challenges a trial court jury instruction requiring him to support his aggravation claim with evidence of objective medical findings. Because the nature of Felipe's injury excuses any requirement for objective findings and the court's instruction prevented Felipe from arguing his theory of the case, we reverse and remand for proceedings consistent with this opinion. As neither party has yet prevailed, we deny Felipe's request for an award of attorney fees under RCW 51.52.130(1) as premature.

## FACTS

Felipe suffered a closed head injury when he fell off a ladder in April 2011 while working. He does not know what caused the fall. He first remembers

waking up in a hospital with head pain. His doctors read two CAT (computed axial tomography) scans, performed on April 19 and April 25, as normal. He developed headaches that his neurologist thought were consistent with postconcussive syndrome. He experienced depression in May 2011. Felipe applied to the Department of Labor and Industries (Department) for industrial insurance benefits. The Department allowed the claim and provided benefits to Felipe.

Felipe treated with several providers. He began seeing Dr. Jon Sukachevin in November 2011. Felipe's headaches had improved but then became worse two months before this visit. Sukachevin diagnosed Felipe with several conditions, including major depression, headache, and concussion. Felipe's headaches improved at the end of 2011 with the help of medication. The Department closed his claim on May 9, 2012. As of that date, he experienced some headaches that resolved with pain medication.

Sukachevin continued to see Felipe for his ongoing conditions, including other industrial injuries. Sukachevin referred Felipe to a psychologist for his depression, who, in turn, referred Felipe to a brain injury specialist because he thought Felipe suffered from a traumatic brain injury. Industrial insurance covered only one visit to the psychologist. The Department denied the referral to a brain injury specialist.

On October 24, 2012, Sukachevin saw Felipe for newly developed headaches. At the visit, Felipe reported that these headaches began a month earlier and described them as similar to the headaches he experienced after his April 2011 fall. He had at least four headaches per day with a pain level of nine out of ten, up from four out of ten. Felipe also experienced associated vertigo and light-headedness. Sukachevin diagnosed Felipe with "[t]raumatic brain injury [secondary to his April 2011 injury], new problem, uncontrolled; and major depression, uncontrolled." Sukachevin later described Felipe's diagnosis more specifically as a "closed head injury."

After seeing Felipe in October 2012 for headaches, Dr. Sukachevin assisted Felipe in applying to the Department to reopen his claim based on his worsening condition. On the November 6, 2012, application, Sukachevin listed Felipe's symptoms: headaches, dizziness, memory problems, fatigue, and depression. He described Felipe's headaches as "worse." He proposed a treatment plan: "refer him to the neurologist and—and a traumatic brain injury specialist, refer for MRI [magnetic resonance imaging] of the brain and to follow up with the psychologist." Felipe had an MRI on November 17. The radiologist's report stated that the MRI revealed "'punctate blooming artifacts, subcortical white matter, white frontal lobe, suspicious for an area of remote small hemorrhage.'"

In January 2013, neurologist Dr. William Stump examined Felipe at the Department's request. Stump performed a general physical examination and a neurological exam. He also reviewed Felipe's medical records and MRI report. Felipe reported to Dr. Stump painful headaches, dizziness, depression, anxiety, and sleeping difficulties. Stump diagnosed Felipe with a closed head injury due to his April 2011 fall, concluding that he most likely suffered from a concussive syndrome as a result but that it had resolved. The State agrees that Dr. Stump based his closed head injury diagnosis on subjective findings alone.[1]

The Department denied Felipe's application to reopen his claim. On reconsideration, the Department affirmed its earlier order. Felipe appealed to the Board of Industrial Insurance Appeals (Board).

The Board received each party's medical testimony through deposition. Sukachevin opined that Felipe experienced an aggravation of his April 2011 injury. He based this opinion on the fact that Felipe had passed out in March 2013 and that he reported that the intensity of his headaches had worsened. He also opined that the MRI report "showed evidence that patient may have had a hemorrhage in the brain" and that this was related to his accident because of a lack of any other episodes of head trauma since Felipe's fall. On cross-examination, Sukachevin testified that the November 17 MRI findings were the

---

[1] The State acknowledged this at oral argument.

only objective medical evidence of Felipe's worsening condition. He testified that he doesn't read MRI films, so he based his interpretation on the radiologist's report. He also testified about the possibility that the CAT scan missed this abnormality in April 2011.

Stump testified that Felipe's condition had not objectively worsened after May 9, 2012. He disagreed that the MRI report showed that Felipe suffered from a hemorrhage. He concluded that Felipe "had persistent pain in the top of his head" but concluded that this was not a result of the April 2011 injury because the changes that would have developed at the time of Felipe's injury would have healed within three to six months—before the time the new headaches began.

The Board affirmed the Department's order. Felipe appealed to the superior court.

At the superior court trial, counsel read to the jury the testimony given to the Board. The trial court instructed the jury that proof of Felipe's claimed aggravation must be supported by medical testimony based in part on one or more objective findings.

> Aggravation of Reymundo Felipe's industrially related condition and the extent of Reymundo Felipe's increased disability on the date of claimed aggravation must be supported by medical testimony based at least in part upon one or more objective findings.
> Statements of complaints by the worker made to a physician are called subjective complaints. Findings of disability that can be

seen, felt, or measured by an examining physician are called objective findings.

In determining whether aggravation has occurred and the extent of any resulting increased disability, a physician cannot rely solely upon complaints, but must have some objective basis for his or her opinion. On the other hand, a physician need not rely solely upon objective findings. If there are objective findings, then the physician may also consider subjective complaints.

Felipe objected to the court's instruction. He argued that the nature of his injury excused him from presenting objective evidence of aggravation. The jury returned a defense verdict. Felipe appeals.

## STANDARD OF REVIEW

An appellate court reviews jury instructions de novo and reverses the trial court only when an instruction contains an error of law that prejudices a party.[2] "'Jury instructions are sufficient if they allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied.'"[3] We review de novo a party's entitlement to statutory fees.[4]

## ANALYSIS

Felipe claims that the trial court should not have required him to prove his aggravation claim with expert testimony based at least in part on objective

---

[2] Joyce v. Dep't of Corr., 155 Wn.2d 306, 323, 119 P.3d 825 (2005).

[3] Joyce, 155 Wn.2d at 323 (quoting Hue v. Farmboy Spray Co., 127 Wn.2d 67, 92, 896 P.2d 682 (1995)).

[4] Sacred Heart Med. Ctr. v. Knapp, 172 Wn. App. 26, 28, 288 P.3d 675 (2012).

findings. He contends that expert testimony based on subjective findings is sufficient.

As the Industrial Insurance Act (IIA)[5] is remedial in nature, courts liberally construe it in favor of the worker.[6] The IIA permits an injured worker to reopen a claim upon showing that an aggravation of a disability occurred within seven years after the Department closed that claim.[7] The aggravation need not be the result of the work injury but can be a worsening produced by daily life.[8] Though not required by statute, some case law requires the worker to support a request to reopen with some objective medical evidence, verified by a physician, that the injury has worsened since the closure of the claim.[9]

Objective findings of disability are those that can be seen, felt, or measured by a physician.[10] Subjective findings are those based on the patient's report to the physician about symptoms perceived only by the senses and feelings of the patient.[11]

---

[5] Title 51 RCW.

[6] Wilber v. Dep't of Labor & Indus., 61 Wn.2d 439, 446, 378 P.2d 684 (1963).

[7] RCW 51.32.160(1)(a); Dep't of Labor & Indus. v. Slaugh, 177 Wn. App. 439, 446, 312 P.3d 676 (2013), review denied, 180 Wn.2d 1007 (2014).

[8] Tollycraft Yachts Corp. v. McCoy, 122 Wn.2d 426, 432, 858 P.2d 503 (1993).

[9] Tollycraft Yachts Corp., 122 Wn.2d at 432; Wilber, 61 Wn.2d at 446.

[10] Wilber, 61 Wn.2d at 445 (quoting Hinds v. Johnson, 55 Wn.2d 325, 327, 347 P.2d 828 (1959)).

[11] Wilber, 61 Wn.2d at 445 (quoting Hinds, 55 Wn.2d at 327).

In Price v. Department of Labor & Industries,[12] the Supreme Court eliminated the objective finding requirement for psychiatric disabilities. Felipe argues that the rationale for this decision applies equally to his injury and resulting symptoms. The Department disagrees, claiming Felipe's claim involves only physical conditions.

Price applied to reopen her worker's compensation claim based on increased neck and low back pain.[13] She presented expert testimony that the pain she felt was real, though perhaps partly of psychological origin, and affected her ability to work just as if she had objective symptoms that fully explained her pain.[14] The Department presented expert testimony that because Price's pain was caused largely by psychological factors, she would be able to work if she were denied benefits because this would make her feel the urgency of work.[15] Price lost before the Department,[16] the Board,[17] and the superior court.[18]

On appeal, Price challenged a jury instruction nearly the same as the one Felipe challenges. She argued that the instruction was inappropriate when a worker claims a psychological or psychiatric disability.[19] The instruction, taken

_____

[12] 101 Wn.2d 520, 529, 682 P.2d 307 (1984).
[13] Price, 101 Wn.2d at 522.
[14] Price, 101 Wn.2d at 523.
[15] Price, 101 Wn.2d at 523.
[16] Price, 101 Wn.2d at 522.
[17] Price, 101 Wn.2d at 523.
[18] Price, 101 Wn.2d at 524.
[19] Price, 101 Wn.2d at 524.

almost verbatim from former pattern jury instruction 155.09,[20] told the jury that Price had to prove her alleged increase in disability with medical testimony based in part on objective medical findings:

> "The extent of any alleged increase in plaintiff's permanent disability . . . must be established by medical testimony based at least in part upon one or more objective findings. In evaluating such increased disability, if any, a physician cannot rely solely upon complaints but must have some objective basis for his opinion."[21]

The Supreme Court agreed with Price. It quoted the note on use for the challenged former pattern instruction: "'This instruction may not be proper in instances of mental, emotional, post concussion syndrome, loss of hearing and loss of sight cases, because these conditions may not have objective findings present.'"[22]

The court provided two rationales for its decision. It first stated that it had not departed from a line of decisions that began with Peterson v. Department of Labor & Industries.[23] In Peterson, the court reversed a trial court decision denying the aggravation claim of a worker with a large number of subjective symptoms with no organic explanation.[24]

---

[20] 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.09, at 464 (2d ed. 1980) (WPI).

[21] Price, 101 Wn.2d at 523 (alteration in original).

[22] Price, 101 Wn.2d at 525 (quoting WPI 155.09 note on use at 464 (1980)).

[23] 178 Wash. 15, 33 P. 2d 650 (1934).

[24] Peterson, 178 Wash. at 21-22.

The court then discussed two cases that followed Peterson: Husa v. Department of Labor & Industries[25] and Anderson v. Department of Labor & Industries.[26] It noted that in Husa it affirmed a worker's compensation award even though the physicians examining the worker could find no physical condition explaining his symptoms.[27] The court stated that the Department's view requiring objective findings to compensate the worker for his mental condition "'is merely to quarrel with the decision in Peterson.'"[28]

The court described its holding in Anderson: "This court upheld the award of compensation for the neurasthenic condition, rejecting the Department's contention that there must be objective symptoms to support any compensation award."[29] It stated that the Anderson decision acknowledged the objective finding rule but declined to apply it because that would exclude traumatic neurasthenia from the category of compensable injuries and effectively overrule Peterson and Husa.[30]

The court then noted its decision in Gakovich v. Department of Labor & Industries,[31] which it described as "inexplicably" ignoring Peterson, Husa, and

---

[25] 20 Wn.2d 114, 146 P.2d 191 (1944).
[26] 23 Wn.2d 76, 159 P.2d 397 (1945).
[27] Price, 101 Wn.2d at 525.
[28] Price, 101 Wn.2d at 525 (quoting Husa, 20 Wn.2d at 120-21).
[29] Price, 101 Wn.2d at 526 (citing Anderson, 23 Wn.2d at 78-79).
[30] Price, 101 Wn.2d at 527 (quoting Anderson, 23 Wn.2d at 79).
[31] 29 Wn.2d 1, 4, 184 P.2d 830 (1947).

Anderson.[32] The court overruled Gakovich insofar as it was inconsistent with the court's opinion.[33]

The court provided a second rationale for its decision. The objective finding rule existed to address two concerns: (1) the distinction between a treating and nontreating physician for purposes of the hearsay rule and (2) the fear of fictitious and feigned claims.[34] The court stated that both of these reasons had been eliminated.[35]

The court found the challenged instruction prejudicial in part because the Department's counsel argued to the jury that Price's claim failed because her experts based their opinions on her subjective complaints.[36]

Felipe analogizes his headache pain, depression, and memory problems stemming from his postconcussive syndrome to a psychological or psychiatric disability because his symptoms cannot be measured, felt, or seen by a physician. For this reason, he contends that Price controls and the objective finding requirement should not apply to his claim. The Department responds that

---

[32] Price, 101 Wn.2d at 527.
[33] Price, 101 Wn.2d at 528.
[34] Price, 101 Wn.2d at 527.
[35] Price, 101 Wn.2d at 527-28.
[36] Price, 101 Wn.2d at 529.

Price applies only to claims involving psychological conditions and Felipe suffered a physical injury.[37]

Price teaches that if the symptoms of a condition are exclusively subjective in nature, an instruction on objective-subjective evidence is improper.[38] The Department's attempt to distinguish Price by noting that Felipe's injury began with physical trauma to the head fails. The court's approving quote of its observation in Husa and Peterson defeats this argument: """The fact, however, that physical manifestations of appellant's injury have disappeared, makes his condition and suffering none the less real."""[39]

A recent Board decision confirms our reading of Price:

The requirement for objective medical findings in applications to reopen is excused for those conditions that are not subject to objective measurement. The rigid requirement that there must be objective medical findings to support allowance of a condition—as contended by the Department—comes from conflating the requirement for objective findings in reopening claims and the requirement for objective findings supporting entitlement to permanent partial disability. Contrary to the Department's argument, there is no statutory or judicial requirement requiring objective medical findings to support allowance of a claim.[40]

---

[37] While Felipe claims depression to be one of his symptoms and bases his claim for reopening in part on this, he presented no evidence to the trial court to show that his depression worsened between May 9, 2012, and August 7, 2013, and thus we conclude that he may not make that claim to this court.

[38] Price, 101 Wn.2d at 528.

[39] Price, 101 Wn.2d at 526 (quoting Husa, 20 Wn.2d at 121 (quoting Peterson, 178 Wash. at 19)).

[40] In re Boyer, No. 13 19364, 2014 WL 7649068, at *6 (Wash. Bd. of Indus. Ins. Appeals Dec. 2, 2014) (footnotes omitted).

We also observe that after the Price decision, the note on use for former WPI 155.09, relied on by the court in its opinion, has been modified more emphatically to limit its use: "This instruction should be given in cases of physical disability but should not be given in cases involving mental or emotional disability, loss of hearing or sight, or postconcussion syndrome."[41]

The symptoms of Felipe's claimed aggravation are subjective in nature. Neither party has suggested that the frequency or severity of Felipe's headaches can be seen, felt, or measured by a physician. The Department conceded at oral argument that its expert forensic neurologist based his diagnosis of Felipe's original condition and his recovery on subjective symptoms. Similarly, Felipe's treating physician relied on subjective findings to support his diagnosis of aggravated headaches.

The trial court erred by instructing the jury that Felipe had to support his claimed aggravation with expert medical testimony based in part on one or more objective findings. This error prejudiced Felipe. The instruction forced his counsel to claim futilely that an MRI artifact provided objective evidence of aggravation. It permitted the Department's counsel to argue forcefully, as he did, that Felipe's claim failed due to the absence of objective findings without the jury needing to consider if Felipe's disability had worsened.

---

[41] 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 155.09 note on use at 157 (6th ed. 2012).

Felipe requests an attorney fee award if this court remands and he is successful below, citing RCW 51.52.130. That statute requires an award of attorney fees to a worker where a "decision and order is reversed or modified and additional relief is granted."[42] In a worker's appeal from the decision of the Board, the litigation must affect the accident fund or medical aid fund to support a fee award.[43] The accident fund pays benefits to injured workers, while the medical aid fund provides medical treatment benefits to those workers.[44] The Department argues that this case does not affect the medical aid or accident funds because "a direct and immediate impact on funds" is necessary. Thus, it argues, Felipe is not entitled to attorney fees under the statute.

When an appellate court remands a case for retrial, as we do here, that court cannot properly award fees because the prevailing party has not yet been determined.[45] Thus, at this time a fee award is premature, but the trial court may award appellate attorney fees after retrial, if appropriate.[46]

---

[42] RCW 51.52.130(1).

[43] RCW 51.52.130; Tobin v. Dep't of Labor & Indus., 169 Wn.2d 396, 406, 239 P.3d 544 (2010).

[44] WR Enters., Inc. v. Dep't of Labor & Indus., 147 Wn.2d 213, 216-17, 53 P.3d 504 (2002).

[45] Clark County v. McManus, 188 Wn. App. 228, 245, 354 P.3d 868 (2015), rev'd on other grounds, 185 Wn.2d 466, 372 P.3d 764 (2016).

[46] See McManus, 188 Wn. App. at 245.

CONCLUSION

Felipe based his aggravation claim on worsened headaches produced by a closed head injury, which do not require objective evidence for diagnosis. The trial court erred when it instructed the jury that Felipe had to prove his claim with expert medical testimony based at least in part on objective findings. This error prevented Felipe from arguing his theory of the case. We reverse and remand the case for a new trial. We decline to award attorney fees under RCW 51.52.130(1) because neither party has yet prevailed.

Leach, J.

WE CONCUR:

Spearman, J.

Dwyer, J.

-15-